441 A.2d 403

**Ines Fernandez HATTOUM, Appellant,**

v.

**Pittagore HATTOUM.**

Superior Court of Pennsylvania.

Argued Sept. 29, 1981.

Filed Feb. 5, 1982.

172

Ross S. Bash, Greensburg, for appellant.

Thomas Anton, Greensburg, for appellee.

Before CAVANAUGH, MONTEMURO and VAN der VOORT, JJ.

MONTEMURO, Judge:

This custody action was initiated by the natural mother of three children: one aged twelve and twins aged ten, who were retained in this Commonwealth by their natural father after a vacation spent with him. This retention of the children was contrary to the custom followed by the parents but was in conformity with an order of the court of the Pennsylvania jurisdiction issued in 1973.

Upon extensive review of the matter, we conclude that the lower court, in this instance, correctly assumed jurisdiction, and then having done so, made its determination of the best interests of the children in a manner reasonably within its discretion. We, therefore, affirm the decision below.

## THE FACTS

The parents were divorced by decree of a court of the State of Virginia in January 1973. By decree of that court, the custody of the children was awarded to the mother.

Approximately a year later, both parents had relocated to Westmoreland County, Pennsylvania, and a consent order was entered by both parents in the court of that county whereby custody of the children was transferred to the father.

Although the mother now denies having signed this consent order of December 1973, the clear testimony of a witness to the signing established that the mother did so after full discussion with the attorney who prepared the papers. (R. N.T. 241(a)ff).

A. Well, I remember it most of all because she was a foreign lady and also while I was in there you [husband's attorney] explained to her what this Petition was all about and if she understood that she was giving up custody of her children, and you asked her several times if she knew what she was doing by signing this paper and she said yes she was going to . . . I believe Argentina, and she felt that the custody of her children should be in the hands of her husband, that she thought they would be better off here and also because of the education system in the United States.

Q. Did she as a matter of fact sign this paper?

A. Yes she did. I watched her sign the paper after you had asked her several times if she was sure this is what she wanted and if she understood what she was doing. (R. 295a)

Despite the agreement which transferred custody to the father, the actual, physical custody of the children remained with the mother. She returned to Argentina with the children, who have since spent the school year in Buenos Aires and have spent approximately four months of vacations yearly with their father. This pattern continued from 1974 to December 1979.

In December of 1979 the father, as usual, supplied round-trip air tickets to the children for their vacation visit.[1]

In early January the father telephoned the mother and informed her that he intended to retain the children permanently. In April of 1980 the mother initiated this action as a Writ of Habeas Corpus and Rule to Show Cause.

---

1. Since seasons are reversed from those of the northern hemisphere, this was the long "summer" vacation for the children.

Hearing was held in the matters on April 30, 1980. A supplementary hearing was held on August 13, 1980, to present more evidence on jurisdiction. The children were interviewed *in camera* with counsel present. All three children preferred the school in Pennsylvania, enjoyed living with their father and stepmother, and regretted not having daily contact with family while at the boarding school in Argentina. One child clearly preferred to live with the father, one clearly preferred the mother, and the third refused to choose. All children expressed love for both parents. Evidence was taken as to the parental incomes, residences, and neighborhoods.

The Court of Common Pleas issued an order on October 31, 1980, which found that jurisdiction was properly in that court and which then awarded custody of the children to the father, with visitation to the mother.

## THE LAW

The Uniform Child Custody Jurisdiction Act, 42 Pa.C.S.A. § 5341–5366 follows the Uniform Law approved by the National Conference of Commissioners on Uniform State Laws and the American Bar Association in 1968. Some thirty-eight of the states have adopted the law; however, it is not a "reciprocal" law and is in full operation in each state regardless of its enactment in other states. See Comment of Commissioners, 9 *Uniform Laws Annotated*, p. 114, West Publishing Co. 1979. The intent of the Act has always been that its general policies shall apply to international custody cases as well, see *id.*, and 42 Pa.C.S.A. 5365 confirms this for Pennsylvania. This court, therefore, has no problem in applying the provisions of the Act to the facts of the instant action, in which the alternative jurisdiction for the children would be Argentina.

The Act has three major bases for jurisdiction: § 5344(a)(1) provides for "home" jurisdiction; § 5344(a)(2) provides for jurisdiction based on "significant contacts" among the various parties to the custody action and the locale in which the action has been brought; § 5344(a)(3)

provides for *"parens patriae"* jurisdiction for emergency situations in which a child is abandoned, abused or dependent.

The Act treats as preferable the "home" jurisdiction under § 5344(a)(1). This jurisdiction either is the "home" state of the child at the beginning of the proceedings or *was* the "home" state within six months prior to commencement of proceedings. *In the Matter of D.L.S. and J.L.S., Appeal of KAS*, 278 Pa.Super. 446, 420 A.2d 625 (1980).

There are circumstances, however, in which a court may determine that "home" jurisdiction does not prevail. The second base of jurisdiction provides as follows:

(2)(i) the child and his parents, or the child and at least one contestant, have a significant connection with this Commonwealth; and

(ii) there is available in this Commonwealth substantial evidence concerning the present or future care, protection, training, and personal relationships of the child.

Although the drafters of the Uniform Act were careful to state that jurisdiction under § 5344(a)(2) was to be "interpreted in the spirit of the legislative purposes" and was intended to "limit jurisdiction rather than proliferate it," the Act clearly implies that there *will* be factual situations that will impel a court to accept jurisdiction even when "home" jurisdiction exists elsewhere. When *two* forums exist, however, only *one* should actually adjudicate:

While jurisdiction may exist in two states in these instances, it will not be *exercised* in both states. *Uniform Laws Annotated, supra*, at 124 (emphasis in original).

Section 5348, labeled "Inconvenient Forum," sets forth the following matters for a court to ponder in deciding whether it should defer its valid jurisdiction to the valid jurisdiction also possible in another forum:

(1) If another state is or recently was the home state of the child.

(2) If another state has a closer connection with the child and his family or with the child and one or more of the contestants.

(3) If substantial evidence concerning the present or future care, protection, training, and personal relationships of the child is more readily available in another state.

(4) If the parties have agreed on another forum which is no less appropriate.

(5) If the exercise of jurisdiction by a court of this Commonwealth would contravene any of the purposes stated in § 5342 (relating to purposes and construction of subchapter).

In any instance where two valid forums exist, it is reasonable to expect that some of the items listed, *supra*, will favor one jurisdiction and some the other. In the end, the decision may turn on § 5348(c)(5), *supra*, an emphasis on the purposes and spirit of the Act.[2]

## DISCUSSION

This case presents an unusual factual situation in which two jurisdictions have colorable reason to exercise jurisdiction.

Argentina has long since become the "home" jurisdiction for these children. They have lived there under the primary control of their mother since 1974, with all the normal

---

**2.** We note that the other section specifically addressing the decision of a forum to *decline* to accept jurisdiction is § 5349, "Jurisdiction Declined by Reason of Conduct." By its terms it does not touch the facts of this case, being concerned at (a) with an "initial decree" and at (b) with "modification of a foreign decree." Neither situation fits the unique facts of the instant action.

However, the wording is clearly allied to the language at § 5342, which outlines as a purpose of the act the prevention of unilateral action by one parent, resulting in the disruption of children's lives and continuing controversies in several jurisdictions.

We note, therefore, that the father in the instant action notified the mother of his intent to retain the children at the *beginning* of a scheduled long vacation with him. This provided a "neutral" period of time for action by the mother. In contrast, the typical retaining parent notifies the other parent at the *end* of a visitation or during a short visitation, causing the abrupt disruption of life so abhorrent to the intent of the Act.

growth of significant contacts usual under those circumstances.

However, this Commonwealth also has significant contacts to these children. The children lived here as permanent residents with their mother in 1973. The father has permanently resided here from 1973 to the present date. The children have returned to visit their father in the original residence for approximately a third of every year. Significant contacts certainly have existed with this state since 1973, and there is ample evidence as to the care, training, and personal relationships in this state.

■ Most importantly, both parents freely agreed to a modification of the initial custody order issued by the Commonwealth of Virginia. By signing the consent agreement in Westmoreland County, both parents agreed to submit themselves to that court as the preferred forum for custody matters concerning these children, in lieu of Virginia, the former residence of both parties, or Argentina, the then-anticipated residence of the mother.

Admittedly, these facts are unusual. It is rare for one person to have legal custody under a court order, yet yield actual physical possession and control of the children to the other parent for years. In searching the record, we have discovered information that appears to explain the puzzle.

As set forth, *supra*, the mother in the instant case stated that she "felt custody should be in the hands of her husband." As to a travel permit he signed, the father's uncontradicted testimony contained the casually-offered information that "only the father can give authorization to children under age in Argentina to travel." (R. N.T. 42a). The visas of the American-born twins indicate their Pennsylvania address as permanent and labels them "tourists" in Argentina. The passport of the Argentinian-born child gives the Pennsylvania address as permanent and describes him as an "Alien Permanent Resident" of the United States. The

father credibly states that he personally always considered his own address to be the children's permanent home.

There is little doubt that both parents in this instance, influenced by custom dissimilar to the present concepts of custody in this country, honestly agreed that the father had the right to legal custody and the primary right to determine the children's future. The mother's actual custody, and the establishment of the "home" jurisdiction in Argentina, was by grace of the father's permission.

No parental agreement, of course, can permanently determine the custody of children. *Commonwealth ex rel. Viehdeffer v. Viehdeffer*, 235 Pa.Super. 447, 344 A.2d 613 (1975). The best interests of the child determine custody, and a court with proper jurisdiction has power to re-determine that best interest where circumstances change. *Commonwealth ex rel. Heller v. Yellin*, 174 Pa.Super. 292, 101 A.2d 452 (1953). However, this mother, in acceding to the custody in the father by agreed court order in this state, also placed the custody issue under the jurisdiction of this court.

That would not finally determine the issue in every custody matter. Under the terms of § 5348, Refusal on Grounds of Inconvenient Forum, the entrance of an order in a particular jurisdiction is a factor, but certainly not the *only* factor. We could hypothesize a case in which the forum of parental choice for an initial order was not presently substantially connected with the lives of the children, or where unilateral conduct of a "snatching" parent was outrageous, and § 5349, therefore, precluded exercise of jurisdiction by this Commonwealth.

The instant action, however, does not offer facts to overcome the parental agreement to the court of Westmoreland County as a forum for custody. Here we have two jurisdictions with continuous, long-term connections to the children, in either of which evidence could be produced as to

their welfare. There is no conflicting foreign order to consider, and no simultaneous proceeding in a foreign court. Conduct of the parent retaining the children was not unreasonable, given his prompt notice of intent to retain them and his possession of custody under court order. The Act was not contravened in letter or in spirit, and the lower court was therefore free to assume and exercise jurisdiction in this case.

Having correctly determined the jurisdictional issue, the court below properly considered the matter in light of the best interests of the children.

## BEST INTERESTS OF THE CHILDREN

Our review of the entire record below, and the thorough findings of fact excerpted by the lower court for review, and the extensive opinion of the lower court based on those findings, has convinced this court that the trial judge properly reviewed the evidence presented and that his determination in favor of custody for the father over the mother was well within his discretion.

As always, when children are well-loved and adequately cared for by both parents, the decision is not an easy one. The father's far greater income and suburban location weigh in his favor, as does the preference of the children for the American school and neighborhood. The most important factor, however, is the daily contact the children now have with their father and stepmother in Pennsylvania as contrasted with weekly visits with their mother while in boarding school in Argentina.

One factor among the many involved was the inflation rate in Argentina, which has rapidly increased the father's tuition obligations to a confiscatory amount, combined with the fact that public schools in Buenos Aires are agreed among the parties to be too poor to offer an alternative education for these children.

We are satisfied that the lower court seriously considered all the factors involved, and that its decision to re-affirm the old provisions giving the father custody was correct.

Order affirmed.