463 A.2d 1056

**Marina G. TETTIS**

v.

**Peter E. BOYUM, Appellant.**

Superior Court of Pennsylvania.

Argued April 14, 1983.

Filed July 15, 1983.

10

Gordon J. Daghir, St. Marys, for appellant.

Patrick J. Kronenwetter, Emporium, for appellee.

Before HESTER, POPOVICH and HOFFMAN, JJ.

HESTER, Judge:

Presently before us is a custody dispute which raises questions relating to jurisdiction and statutory interpretation. The father is appellant herein, the lower court having granted custody of the couple's two minor children to appellee, the natural mother.

As in all custody cases, a recital of this particular family's background is necessary in order to evaluate the issues raised herein. The parties were married while both were members of the military forces. Two children were born to them, a daughter named Jimmie Tettis on January 28, 1977, and a son, Peter J. Boyum, on January 15, 1979. Their assignments stationed them in San Angelo, Texas, in September of 1979. Shortly thereafter, appellee removed her-

self from the family abode and established a separate residence in that city. By Order of Court, the parties were divorced on May 14, 1980. Appellant received uncontested primary custody of the children, who had resided with him continually since their mother's departure. Appellee visited them on a daily basis until March, 1981, when she returned to her hometown, St. Mary's, in Elk County, Pennsylvania.

Appellant delivered the children to appellee for two extended visits, once in 1981 for four months and in April, 1982. Prior to the planned return of the children, appellee filed a petition in the Court of Common Pleas of Elk County, Pennsylvania, seeking custody pursuant to the Uniform Child Custody Jurisdiction Act (hereinafter "U.C.C. J.A."), 42 Pa.C.S.A. § 5341 *et seq.* A hearing was held on July 9, 1982, at which time both parties were present and testified. Custody was thereafter awarded to appellee on August 5, 1982. It is from that Order which appellant perfects this appeal.

Appellant raises two issues on this appeal:

1) whether jurisdiction existed in the Court of Common Pleas of Elk County, Pennsylvania, in light of a prior custody order from the State of Texas, and

2) if so, whether the facts of this case show such changed circumstances as to warrant transfer of custody from appellant to appellee.

We will address each of these issues *seriatim;* however, before we do so, a brief review of the purposes of the U.C.C.J.A. is in order.

The legislature, in drafting this law, sought to alleviate certain problems which have inevitably resulted from the ever-increasing number of divorces. Primarily, this Act was intended to deter abductions, unilateral removal, and improper retention of children by one of the parents in order to thwart a custody award or to gain an upper hand in the custody fight. The legislature also attempted to promote cooperation and facilitate the enforcement of foreign custody decrees by avoiding jurisdictional conflicts with courts of other states and relitigation of foreign custody

awards. Finally, this Act sought to assure that custody disputes would be heard in the state with which the child and his family have the closest connection. 42 Pa.C.S.A. § 5342(a)(1)–(8). *Commonwealth ex rel. Zaubi v. Zaubi,* 275 Pa.Super. 294, 418 A.2d 729 (1980), *aff'd.* 492 Pa. 183, 423 A.2d 333 (1980).

I

■■ Generally, a court in this Commonwealth has jurisdiction to make a child custody determination by initial or modification decree if:

"(1) this Commonwealth:

(i) is the home state of the child at the time of commencement of the proceeding; or

(ii) had been the home state of the child within six months before commencement of the proceeding and the child is absent from this Commonwealth because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this Commonwealth;

(2) it is in the best interest of the child that a court of this Commonwealth assume jurisdiction because:

(i) the child and his parents, or the child and at least one contestant, have a significant connection with this Commonwealth; and

(ii) there is available in this Commonwealth substantial evidence concerning the present or future care, protection, training, and personal relationships of the child;

(3) the child is physically present in this Commonwealth, and:

(i) the child has been abandoned; or

(ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent;

(4)(i) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraph (1), (2) or (3), or another state has declined to

exercise jurisdiction on the ground that this Common-
wealth is the more appropriate forum to determine the
custody of the child; and

   (ii) it is in the best interest of the child that the court
   assume jurisdiction; or

(5) the child welfare agencies of the counties wherein the
contestants for the child live, have made an investigation
of the home of the person of whom custody is awarded
and have found it to be satisfactory for the welfare of the
child."

42 Pa.C.S.A. § 5344. These bases for jurisdiction can be
roughly characterized as (1) "home state" jurisdiction, (2)
jurisdiction founded upon "significant contacts" among the
parties to the custody action and the locale in which the
action has been brought, and (3) "parens patriae" jurisdic-
tion for those situations where a child is abandoned, abused,
or dependent.[1] *Warman v. Warman,* 294 Pa.Super. 285,
293, 439 A.2d 1203, 1207 (1982).

Appellant initially argues that the lower court lacked
home state jurisdiction as provided in § 5344(a)(1)(i). It is
abundantly clear that such is the case, since the children
had resided in Texas from 1979 until their visit to their
mother in April, 1982. They had only been with their
mother for two months when she initiated these proceed-
ings to determine custody. Consequently, the six month
residency period prescribed by § 5344(a)(1)(ii) had not been
fulfilled either. However, the lower court readily agreed
with appellant's assessment of this jurisdictional basis, and
specifically rejected it as not controlling.

Instead, the hearing judge ruled that it was in the best
interests of the children that jurisdiction be vested in this
Commonwealth pursuant to § 5344(a)(2), by virtue of the
significant contacts among the children, the mother, and the
Commonwealth of Pennsylvania. Although he did not elab-
orate upon those connections, a review of the record reveals
that appellee and the children are currently residing with

---

**1.** It is manifestly apparent that the third basis for jurisdiction is
inapplicable to the case at bar.

appellee's parents, two brothers, and grandmother in her parents' home. Appellee has lived there since her departure from Texas in 1981, and she currently is employed part-time at a nearby hospital. The daughter, Jimmie resided in St. Mary's for over two years at various times in her life; Peter was born in St. Mary's and lived there for eight months after his birth. Finally, both children enjoyed a four-month visit with appellee in Pennsylvania in 1981.

Conversely, the hearing judge observed that appellant had been transferred from his former military base in Texas for a temporary duty assignment in California, and that he deposited the children with appellee in April, 1982, while en route to his new assignment. Moreover, at the time of the hearing, appellant was uncertain as to where he would be stationed at the conclusion of his tour of duty in California. Because of the contacts that existed among appellee, the children, and Pennsylvania, and in light of the diminishing connections among appellant, the children, and Texas, the lower court ruled that an assumption of jurisdiction by this Commonwealth over the instant custody dispute was in the best interests of the children.

However, the lower court failed to consider whether Texas retained jurisdiction over this matter. Before the courts of this Commonwealth can assume jurisdiction, it must appear that "no other state would have jurisdiction under prerequisites substantially in accordance with paragraph (1), (2), or (3). . . ." 42 Pa.C.S.A. § 5344(a)(4)(i). *See Commonwealth ex rel. Earl R.D. v. Linda H.S.*, 297 Pa.Super. 78, 443 A.2d 307 (1982). In yet another section of the U.C.C.J.A., the Pennsylvania courts are directed to:

"recognize and enforce an initial or modification decree of a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with this subchapter or which was made under factual circumstances meeting the jurisdictional standards of this subchapter, so long as the decree has not been modified in accordance with jurisdictional standards substantially similar to those of this subchapter."

42 Pa.C.S.A. § 5344. While the U.C.C.J.A. is not a recipro-
cal law, the courts of this Commonwealth are not free to
disregard all custody decrees emanating from those states
which have not adopted this Act. Instead, the case law and
statutes of the foreign state must be examined to determine
whether that state should assume or continue jurisdiction of
the custody dispute. *Commonwealth ex rel. Earl R.D. v.
Linda H.S., supra.* 42 Pa.C.S.A. § 5355.

Texas, while not a party to the U.C.C.J.A., did promulgate
legislation in 1979 defining the original jurisdiction which a
court of Texas must satisfy before ruling upon any suit
affecting a parent-child relationship. That statute provides:

"(a) A court has original jurisdiction of a suit affecting
the parent-child relationship, whether or not the child is
physically present in the state, only if one of the follow-
ing conditions is met:

(1) this state:

(A) is the principal residence of the child at the time
the proceeding is commenced; or

(B) was the principal residence of the child at any
time during the six-month period before the proceeding
was commenced, and a parent or person acting as a
parent resides in this state at the time the proceeding is
commenced; or

(2) it is in the best interest of the child that a court of
this state assume jurisdiction because:

(A) the child and the child's parents or the child and
at least one contestant have a significant connection
with this state and there is available in this state
substantial evidence concerning the child's present or
future care, protection, training, and personal relation-
ships;

(B) the child is physically present in this state and
there is a serious immediate question concerning the
welfare of the child; or

(C) it appears that no other state would have jurisdic-
tion under prerequisites substantially in accordance
with this section, or another state has declined to

exercise jurisdiction on the ground that this state is the more appropriate forum to determine issues concerning the child.

(b) The physical presence in this state of the child or of the child and one of the contestants is alone insufficient to confer jurisdiction to the court to make a determination under this subtitle."

V.T.C.A., Family Code § 11.045.

Even a cursory reading of the above section reveals the resemblance between it and 42 Pa.C.S.A. § 5344. Moreover, in a notation following § 11.045, the legislature observed that this section is similar to § 3 of the model U.C.C.J.A., which of course served as the basis for Pennsylvania's version of the U.C.C.J.A. *See also Albers v. Ames*, 616 S.W.2d 653, 655 (Tex.Civ.App.—San Antonio 1980), *rehearing denied* February 5, 1981. The Texas Court of Civil Appeals, Dallas, observed:

"Both the Restatement (Second) and the Uniform Act are consistent with this well-settled Texas law to the extent of recognizing that in the case of nonresidents, the court should consider the circumstances of the child and of the parties in order to determine whether the custody issue should be decided in some other forum."

*Perry v. Ponder*, 604 S.W.2d 306, 317 (Tex.Civ.App.—Dallas 1980). Our scrutiny of the statutes and case law of Texas leads us to conclude that Texas employs prerequisites substantially similar to those applied by this Commonwealth to custody matters. We must now determine if Texas retains jurisdiction pursuant to those guidelines.

In seeking to stem the forfeiture of jurisdiction from Texas to Pennsylvania, appellant strenuously argues that Texas is the appropriate forum. To support his case, appellant contends that Texas is the home state of both himself and the children. Appellant expressed every intention of retaining Texas domicile in spite of his movement to California and from there to his next assignment. To enhance this claim, appellant submits copies of his vehicle registration, receipt for his motor vehicle, a Leave and Earnings State-

ment, and several other documents, all of which reflect San Angelo, Texas, as appellant's permanent address. At the hearing, appellant testified about his firm resolve to retire in Texas at the end of his military career.

■ Texas clearly was the home state of the children at the institution of these proceedings. In light of appellant's unique position of being a member of the military forces and subject to frequent moves, we are certainly willing to credit his testimony concerning his intent to establish a permanent domicile in Texas. However, while home state jurisdiction is favored as the preferable basis of jurisdiction, *Warman v. Warman, supra,* "the Act clearly implies that there *will* be factual situations that will impel a court to accept jurisdiction even when 'home' jurisdiction exists elsewhere." *Hattoum v. Hattoum,* 295 Pa.Super. 169, 175, 441 A.2d 403, 406 (1982) (Emphasis in original). Herein, the lower court found the "substantial contacts" basis to be more compelling.

In response to that finding, appellant counters that the necessary evidence concerning the care, protection, training, and personal relationships of the children for the two and one-half years preceding their wrongful retention in Pennsylvania is located in Texas. He notes that any evidence which appellee desired to proffer concerning the children's future care could easily be introduced in a Texas court of law. In light of the above-cited reasons, appellant argues that he and the children had more significant connections with Texas than appellee and the children had with Pennsylvania.

At the time this action was commenced in June, 1982, the children unquestionably had significant present connections to the State of Texas. Both children resided in Texas for over two and one-half years of their young lives. There they attended day-care centers and developed relationships with those whom they encountered on a daily basis. We must concede that substantial evidence existed in Texas as to their "present or future care, protection, training, and personal relationships." Thus, as seen from our analysis

and from that of that lower court, under both the Pennsylvania and Texas statutes governing child custody disputes, jurisdiction could arguably be claimed.[2]

This is not the first instance where this Court has been caught between two states with colorable reason to exercise jurisdiction. In *Hattoum v. Hattoum, supra,* the mother, who retained physical custody of her children, resided in Argentina. For five years, she returned the children to their father in Pennsylvania for their annual four-month visit. In the fifth year, after the children arrived for their visit, the father instituted custody proceedings. Although substantial contacts with the children's home jurisdiction of Argentina obviously existed, significant contacts also existed with this state as well as ample evidence of the children's care, training, and personal relationships in this locale. We held that the lower court did not err in not deferring its valid jurisdiction over the custody proceedings to another valid jurisdiction. Admittedly, there was an earlier consent order entered into by both parties in Westmoreland County transferring custody of the children to the father. This fact was not insignificant in our decision to affirm the jurisdiction of the lower court, for we viewed that agreement as a submission of the parties to that court as the preferred forum for the resolution of custody matters.

While the facts of the instant case do not exactly parallel those of the *Hattoum* case, they do present justifiable circumstances which warrant a like result. Although at the time of the filing of the action, Texas had continuous long-term connections to the children, that contact had come to an end. Regardless of appellant's intentions to retain Texas as his permanent domicile, the fact remained that, at the conclusion of the children's visit to appellee in July,

---

**2.** This situation was not unforeseen by the drafters of the U.C.C.J.A. In the Commissioners' Note following the provision defining jurisdiction, they observed:

"While jurisdiction may exist in two state in these instances, it will not be *exercised* in both states."

9 *Uniform Laws Annotated,* p. 124, West Publishing Co., 1979. (emphasis in original).

1982, they would have been sent to California to join appellant, who had already departed from Texas. Thus, the forum where the parties entered into the consensual divorce and custody decree would no longer be presently substantially connected with either the children or with appellant. In light of these facts, we affirm the decision of the trial judge that the best interests of the children mandated an assumption of jurisdiction herein.

■ Appellant argues that even if Pennsylvania satisfied the jurisdictional requirements, jurisdiction should have been declined according to 42 Pa.C.S.A. § 5349(b). That statute provides:

> "(b) Restriction on modification of foreign decree—Unless required in the interest of the child, the court shall not exercise its jurisdiction to modify a custody decree of another state if the petitioner, without consent of the person entitled to custody, has improperly removed the child from the physical custody of the person entitled to custody or has improperly retained the child after a visit or other temporary relinquishment of physical custody. If the petitioner has violated any other provision of a custody decree of another state the court may decline to exercise its jurisdiction unless the petitioner can show that conditions in the custodial household are physically or emotionally harmful to the child, the burden of proof being on the petitioner requesting the court to take jurisdiction."

Although the express purpose of the U.C.C.J.A. is to prevent the improper retention of a child after a visit or other temporary relinquishment of physical custody, appellee did not intend to benefit her position in the custody proceeding. Rather, she merely sought to modify the Texas decree in this Commonwealth as opposed to either Texas, where none of those involved now reside, or California, a neutral situs with no present connections to the children. This conduct does not reflect a flagrant disregard of the purpose of the

Act, nor does it serve as a basis to decline jurisdiction as prescribed by § 5349(b).

With respect to the issue of jurisdiction, appellant's final argument is that the record is devoid of any evidence that conditions in his household were physically or emotionally harmful to the children. The Supreme Court ruled in *Commonwealth ex rel. Zaubi v. Zaubi, supra,* that such a showing must be made before Pennsylvania courts could accept jurisdiction to modify a prior foreign custody decree. In that case, the father abducted his children from Denmark in violation of a valid Danish custody decree and sought to relitigate the same facts in a Pennsylvania court. The Supreme Court relied upon 11 P.S. § 2309(b) of the U.C.C.J.A., now 42 Pa.C.S.A. § 5349(b).

This case, as the trial judge aptly noted, is distinguishable from the case at bar. Herein, appellee retained the children after a visit, whereas in the *Zaubi* case, the contestant abducted the children and foiled all attempts of their mother to ascertain their whereabouts. Situations such as the instant one are controlled by § 5349(b) which prescribes that the court shall not exercise its jurisdiction to modify a custody decree of another state *unless* "required in the interest of the child."

Again, this language parallels the model U.C.C.J.A. In defining this clause, the drafters commented that:

"[i]n the case of illegal removal or retention refusal of jurisdiction is mandatory unless the harm done to the child by a denial of jurisdiction outweighs the parental misconduct."

*Uniform Laws Annotated, supra* at 143. As we stated above, the parental misconduct of appellee in retaining the children was slight in view of the extenuating circumstances, i.e., upon their departure, they would not have returned to their former home but they would have travelled instead to a new environment and home in California. If anything, their retention served to lessen the disruption they would

have experienced if they had been shuttled between California and Pennsylvania in the course of this custody matter. Moreover, the lower court relied upon evidence that the children experienced behavioral problems when apart from appellee while in Pennsylvania. We believe that the hearing judge properly found that the interests of the children required an assumption of jurisdiction.

## II

Having concluded that jurisdiction was properly vested in the lower court, we now turn to appellant's complaint in the alternative. The second issue which appellant raises is whether the trial court erred in transferring custody of the children to appellee.

In any custody proceeding where there is a valid prior custody order, such as in the case at bar, the burden rests upon the party seeking modification of that order to prove a substantial change in circumstances that would justify a court's reconsideration of the custody disposition. *Daniel K.D. v. Jan. M.H.*, 301 Pa.Super. 36, 446 A.2d 1323 (1982); *Commonwealth ex rel. Hickey v. Hickey*, 216 Pa. Super. 332, 264 A.2d 420 (1970). When a substantial change in circumstances has been established, both parties shoulder the burden of demonstrating with which parent the children's best interests will be served. *Daniel K.D. v. Jan M.H., supra* 301 Pa.Super. at 42, 446 A.2d 1325. *In Re Custody of Frank*, 283 Pa.Super. 229, 423 A.2d 1229 (1980). Needless to say, it is well-established in this Commonwealth that the primary consideration in every custody proceeding is the best interests and welfare of the child. *Commonwealth ex rel. Newcomer v. King*, 301 Pa.Super. 239, 447 A.2d 630 (1982).

The lower court was correct in concluding that appellee's return to St. Mary's, Pennsylvania, constituted a material change in circumstances which warranted reconsideration of the preliminary custody decision. However, we are

constrained to reverse and remand this case for an additional hearing.

As we have cautioned the lower courts time and again, in order to assess the best interests and general welfare of the child or children, it is the duty of the trial judge to make the fullest possible inquiry in custody actions. *Commonwealth ex rel. Cox v. Cox*, 255 Pa.Super. 508, 388 A.2d 1082 (1978); *Commonwealth ex rel. Ashfield v. Cortes*, 210 Pa.Super. 515, 234 A.2d 47 (1967). All pertinent facts and circumstances surrounding the contesting parties must be fully explored and developed. *Sipe v. Shaffer*, 263 Pa.Super. 27, 396 A.2d 1359 (1979). The hearing judge should consider the character and fitness of the respective parties, the type of home they can offer, their ability to adequately care for the child, and their ability to financially provide for the child. *Gerald G. v. Theresa G.*, 284 Pa.Super. 498, 502, 426 A.2d 157, 159 (1981), quoting *Commonwealth ex rel. Leighann A. v. Leon A.*, 280 Pa.Super. 249, 252, 421 A.2d 706, 708 (1980).

The type of objective evidence concerning the above cited factors cannot be acquired exclusively from the parties themselves. In the hearing conducted below, only the parties and appellee's mother testified. There was no testimony proffered from disinterested witnesses bearing upon the present capabilities of the parties to provide the child with a stable environment. *In Re Custody of Neal*, 260 Pa.Super. 151, 393 A.2d 1057 (1978).

It would be helpful if evaluations were made of the homes each parent could furnish the children. Also, since the trial judge noted that the children adversely reacted to separation from their mother, expert testimony from a child psychologist would assist the trial judge in weighing the actual extent of the traumatic impact upon the children if custody were returned to the father. See *Commonwealth ex rel. Newcomer v. King, supra; Commonwealth ex rel.*

*Michael R. and Kristen Leigh R. v. Robert R.R.,* 314 Pa.Super. 335, 460 A.2d 1167 (1983). Appellant should avail himself of the procedural device found in 42 Pa.C.S.A. § 5359, which encourages out-of-state contestants to adduce testimony of out-of-state witnesses by deposition or otherwise. He should also submit any other evidence, such as social studies pertinent to this custodial matter, which would enlighten the court and enable it to thoroughly evaluate his capabilities as the primary custodial parent in his present assignment.

After the evidence has been presented, the trial court must then provide this court with a comprehensive opinion encompassing a thorough analysis of the record and specific reasons for its ultimate decision. *Commonwealth ex rel. Oxenreider v. Oxenreider,* 290 Pa.Super. 63, 434 A.2d 130 (1981); *Ray v. Ray,* 293 Pa.Super. 216, 438 A.2d 614 (1981). In the instant case, in addition to an inadequate record, we find the lower court opinion to be lacking as well. The majority of the trial judge's opinion addressed the jurisdictional question; only one paragraph was directed to a summary of his reasons for the decision to transfer custody to appellee. This cursory analysis is simply an inadequate basis for appellate review.

We recognize that the hearing held in this case was hastily advanced so as to accommodate the presence of appellant in this Commonwealth, but we cannot "permit a child's future to be disposed of in a summary fashion." *Gunter v. Gunter,* 240 Pa.Super. 382, 402, 361 A.2d 307, 317 (1976). Therefore, we are compelled to conclude that the trial judge lacked sufficient evidence to render a valid custody award. The order of the lower court is reversed and remanded for a more comprehensive hearing on the record. Jurisdiction is relinquished.

POPOVICH, J., concurs in the result.