**Turner v. Turner**

*John H. Klemeger,* for plaintiff.
*Margherita P. Worthington,* for defendant.

THOMSON, *P.J.,* November 23, 1994—This case involves a jurisdictional dispute over a child custody matter. The plaintiff and defendant were formerly husband and wife. The parties are the parents of a minor child, Ashley Christine Turner. The plaintiff resides in Pennsylvania. The defendant and the minor child have resided in New Jersey since January of 1992. The minor child attends school, and has family, friends and doctors in New Jersey.

## PROCEDURAL HISTORY

On September 13, 1993, the parties entered into a stipulation, pertinent part of which provides:

"(5) *Jurisdiction.* The parties agree that the Court of Common Pleas of Pike County shall retain jurisdiction over the custody issue as long as Ethan Turner continues to reside in Pike County, Pennsylvania." (Stipulation, p. 3.)

This stipulation was made an order of this court on September 13, 1993. Due to concerns about defendant's compliance with the order, the plaintiff filed a copy of the order and stipulation in the Superior Court of New Jersey, Chancery Division, Family Part, Passaic

County, in accordance with the provisions of the Uniform Child Custody Jurisdiction Act. On June 27, 1994, defendant filed a rule to show cause why certain modifications to the September 13, 1993 order should not be made in the Superior Court of New Jersey. Plaintiff objected to the jurisdiction of the New Jersey Court. On July 19, 1994, the Superior Court of New Jersey entered an order stating that the State of New Jersey shall have jurisdiction over the minor child. The plaintiff appealed this order. On July 26, 1994 and August 9, 1994, this court entered orders remanding custody of the minor child to plaintiff and ordering a hearing to be held on the merits of plaintiff's motion for contempt and for emergency hearing for modification of custody. On August 9, 1994, the New Jersey Superior Court enjoined plaintiff from continuing in any further proceedings in this court.

On August 17, 1994, the defendant filed a motion to transfer jurisdiction pursuant to 23 Pa.C.S. §5348. On the same day, the defendant filed preliminary objections to plaintiff's petition to modify custody, alleging lack of jurisdiction. On September 8, 1994, the plaintiff filed an answer to the motion to transfer jurisdiction and new matter and also a brief in opposition to preliminary objections. Argument and hearing were subsequently held on the issue of jurisdiction.

## CONCLUSIONS OF LAW

Under the Uniform Child Custody Jurisdiction Act, 23 Pa.C.S. §5341 et seq., preference is given to "home state" jurisdiction. See *Warman v. Warman,* 294 Pa. Super. 285, 298, 439 A.2d 1203, 1210 (1982). The "home state" is the "state in which the child immediately preceding the time involved lived with ... a parent ... for at least six consecutive months." 23 Pa.C.S. §5343.

There are some circumstances when a court may decide that "home state" jurisdiction does not prevail. See *Warman, supra* at 301-302, 439 A.2d at 1211; *Hattoum v. Hattoum,* 295 Pa. Super. 169, 175, 441 A.2d 403, 406 (1982). In these circumstances, a "significant contacts" analysis is performed under 23 Pa.C.S. §5344(a)(2), which provides for jurisdiction when:

"(2) it is in the best interest of the child that a court of the Commonwealth assume jurisdiction because:

"(i) the child and his parents, or the child and at least one contestant, have a significant connection with this Commonwealth; and

"(ii) there is available in this Commonwealth substantial evidence concerning the present or future care, protection, training and personal relationships of the child."

However, caution should be used when performing a "significant contacts" analysis because the drafters of the Uniform Act noted that the purpose of section 5344(a)(2) was "to limit jurisdiction rather than proliferate it." *Warman, supra* at 301, 439 A.2d at 1211, citing Comment of Commissioners, 9 Uniform Laws Annotated at 124, West Publishing Co. 1979.

Sometimes jurisdiction will exist in two states, but if it does, it will not be exercised in both states. *Id.* The Uniform Act authorizes a state to decline jurisdiction if it finds that it is an inconvenient forum and a court of another state has jurisdiction and is the more convenient forum.

The issue of how to proceed when parties once agreed on jurisdiction in a forum other than the "home state" was addressed in *Melzer v. Witsberger,* 299 Pa. Super. 153, 445 A.2d 499 (1982). In *Melzer,* the Superior Court held that it was proper for the Court of Common Pleas

of Greene County, Pennsylvania to find jurisdiction despite the fact that West Virginia was the "home state." The Superior Court affirmed the finding of jurisdiction in Pennsylvania on the basis that the parties entered into a comprehensive stipulation providing that Pennsylvania shall have jurisdiction over "[a]ll disputes pertaining to the enforcement, modification, or other proceedings about ... custody...." *Id.* at 157, 445 A.2d at 502.

## DISCUSSION

The parties in this case are not disputing that New Jersey is currently the "home state" of their minor child, Ashley Christine Turner. As stated previously, "home state" jurisdiction is the preferential jurisdiction under the Uniform Act. Thus, the scale is tipped largely in favor of New Jersey.

However, assuming arguendo, that Pennsylvania has "significant contacts" with the child under section 5344(a)(2), then we conclude that both Pennsylvania and New Jersey have jurisdiction. Since only one state may exercise jurisdiction, "inconvenient forum" analysis should be done pursuant to section 5348. The factors to be considered under the "inconvenient forum" analysis are as follows:

"(1) If another state is or recently was the home state of the child.

"(2) If another state has a closer connection with the child and his family or with the child and one or more of the contestants.

"(3) If substantial evidence concerning the present or future care, protection, training and personal relationships of the child is more readily available in another state.

"(4) If the parties have agreed on another forum which is no less appropriate.

"(5) If the exercise of jurisdiction by a court of this Commonwealth would contravene any of the purposes stated in section 5342 (relating to purposes and construction of subchapter)." 23 Pa.C.S. §5348.

The application of factors one and two to this case clearly results in favor of New Jersey jurisdiction since the child resides, attends school and has family in New Jersey. Factor three also seems to tip the scale in favor of New Jersey. Factor four would tend to favor Pennsylvania jurisdiction due to the stipulation of the parties. Factor five involves the intent of the Uniform Act. Some of the purposes of the Act are to:

"Avoid jurisdictional competition and conflict with courts of other states ... Promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child ... Assure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and his family have the closest connection ... and that courts of this Commonwealth decline the exercise of jurisdiction when the child and his family have a closer connection with another state." 23 Pa.C.S. §5342.

Since the minor child has a closer connection to New Jersey, and since there is a need to avoid jurisdictional competition between New Jersey and Pennsylvania, declining to exercise jurisdiction in Pennsylvania would be more consistent with the Act than exercising jurisdiction would be. Thus, the fifth factor results in favor of New Jersey jurisdiction. Having analyzed all the factors under section 5348, this court concludes that New Jersey is the more convenient forum to exercise jurisdiction.

The plaintiff relies entirely on the case of *Melzer v. Witsberger, supra,* in order to support the exercise of jurisdiction in Pennsylvania. The facts of *Melzer* have similarities with our case. In *Melzer,* the parties agreed to jurisdiction in Pennsylvania despite the fact that West Virginia was the "home state." In the instant case, the parties stipulated to Pennsylvania jurisdiction despite the fact that New Jersey was the "home state." However, the two situations are distinguishable. In *Melzer,* the parties came to an agreement which became an order of the court of Pennsylvania stating that it was: "... a full settlement of all issues, cases and proceedings pending in this court and in this Commonwealth and in the court of Ohio County and in the State of West Virginia...." *Id.* at 157, 445 A.2d at 501.

An amended order, which was also agreed to by stipulation of the parties in *Melzer* provided:

"All disputes pertaining to the enforcement, modification, or other proceedings about the custody ... visitation rights, support, or determination as to the proper venue of such proceedings, shall be submitted to the Greene County Court in (and under the laws of) the Commonwealth of Pennsylvania." *Id.* at 157, 445 A.2d at 502.

By contrast, the stipulation in the instant case is much less comprehensive. It states the following:

"The parties agree that the Court of Common Pleas of Pike County shall retain jurisdiction over the custody issue as long as Ethan Turner continues to reside in Pike County, Pennsylvania." (Stipulation, p. 3.)

Ethan Turner, the plaintiff, still resides in Pike County, Pennsylvania. As a result, the plaintiff argues that jurisdiction should be exercised in Pennsylvania. However, the testimony of the defendant at a hearing on October 18, 1994 evidenced that the plaintiff's house

located in Pike County, Pennsylvania was on the market when the parties entered into the stipulation. The defendant testified that the plaintiff was planning to move out of the State of Pennsylvania. This testimony was not contradicted by the plaintiff, who also testified at the hearing. Thus, the case before us differs significantly from *Melzer,* in that the stipulation here was less comprehensive. Due to the surrounding circumstances, the expectation of at least one party was that jurisdiction would not remain in Pennsylvania throughout the entire custody proceedings.

In addition, the facts of *Melzer* indicate the parties were mutually antagonistic, and the court desired to put an end to their outrageous conduct. The Superior Court wrote as follows:

"At the hearing ..., the extraordinarily antagonistic behavior of both parents became apparent. There was no doubt in the mind of the trial judge and, upon review of the record, none in the mind of this court, that the sight of these two professional parents battering doors, brandishing guns, calling police, withholding clothing, and otherwise misbehaving was, to say the least, detrimental to these children." *Id.* at 159, 445 A.2d at 502.

The Superior Court then went on to quote the comments made by the trial judge during the hearing:

"I sit here and I listen to these types of cases and I keep wondering is human intelligence guiding us to human reason or is this the land again of the barbarians ... Whether it is this court or the Circuit Court in Ohio County [in West Virginia, the 'home state'] ... it is so immaterial to this court. What is material to this court is that the more of this I hear, finally I know these children need a comforting shelter of some objective judgment ... not invaded by whim or fancy on

the part of either parent ... [T]his circumstance they [the parents] are creating ... cannot be continued...." *Id.* at 159, 445 A.2d at 502-503.

The facts of *Melzer* evidenced a need of the Court of Common Pleas to put a sudden halt to the detrimental conduct of the parties. The facts in the case at hand, however, do not indicate such extreme circumstances, and thus, this court is in a better position to thoroughly analyze the jurisdictional issues.

We must also note that the analysis set forth in *Melzer,* upholding the stipulation to Pennsylvania jurisdiction despite the fact that the "home state" was elsewhere, has not *once* been followed by a Pennsylvania court since the decision was rendered in 1982. We do not know why the analysis has not been followed. What we do know is that the trend in this area of law has been to give priority to "home state" jurisdiction and to be consistent with the intent of the Uniform Child Custody Jurisdiction Act.

## CONCLUSION

Considering the intent of the Uniform Child Custody Jurisdiction Act to avoid jurisdictional disputes, the preference for "home state" jurisdiction (here New Jersey) and the fact that Pennsylvania is an inconvenient forum if we assume for purposes of argument that the minor child has significant contacts with Pennsylvania, we must conclude that we should decline to exercise jurisdiction in this case. The facts of this case have significant differences with the facts in *Melzer,* and as a result, the stipulation of the parties regarding jurisdiction will not

be used to circumvent the meaning and intent of the Uniform Child Custody Jurisdiction Act.

### ORDER

And now, November 23, 1994, upon consideration of defendant's motion to transfer jurisdiction, defendant's preliminary objections to plaintiff's petition to modify custody, plaintiff's answers filed thereto, argument and hearing held thereon, it is hereby ordered as follows:

This court declines to exercise further jurisdiction in this matter. This case is transferred to the jurisdiction of the Superior Court of New Jersey, Chancery Division, Family Part, Passaic County.