514 A.2d 184

**Joseph John MOFFITT**

v.

**Judith Marie MOFFITT, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 24, 1986.

Filed Aug. 28, 1986.

Samuel F. Feldman, Allentown, for appellant.

Sandra A. Sernak, Scranton, for appellee.

Before OLSZEWSKI, HOFFMAN and ROBERTS, JJ.

ROBERTS, Judge:

This is an appeal from an order dismissing, for lack of jurisdiction, a counterclaim in a custody action. We hold that in the circumstances presented, the Northampton County Court of Common Pleas has jurisdiction to determine the merits of the counterclaim under the Uniform Child Custody Jurisdiction Act, 42 Pa. C.S.A. §§ 5341–5366. Accordingly, we vacate the order dismissing the counterclaim and remand for proceedings consistent with this opinion.

## I.

The Uniform Child Custody Jurisdiction Act (hereinafter "UCCJA" or "the Act") was designed to insure that custody disputes would be heard in the state where the child and his family had the closest connection, to discourage abductions by parents without legal custody of their children, and to promote cooperation between states issuing custody awards, 42 Pa. C.S.A. § 5342, *Commonwealth ex rel. Zaubi v. Zaubi*, 275 Pa. Super. 294, 300, 418 A.2d 729 (1980), *aff'd*, 492 Pa. 183, 423 A.2d 333 (1980). Accordingly, § 5344 of

the Act provides three bases for the assumption of jurisdiction in a child custody dispute: first, a Pennsylvania court can take jurisdiction if Pennsylvania a) is the child's home state at the commencement of the proceeding, or b) had been his "home state" within six months of commencement, and one of his parents continues to live in the Commonwealth. Second, a Pennsylvania court has jurisdiction when the child and at least one of the parties contesting custody have a significant connection with Pennsylvania and substantial evidence is available here concerning the child's present or future care, protection, training and personal relationships. Finally, in a situation not relevant here, a Pennsylvania court has "parens patriae" jurisdiction when a child is abandoned, abused or dependent. *See, generally,* 42 Pa. C.S.A. § 5344; *Rohrer v. Rohrer,* 345 Pa. Super. 469, 476, 498 A.2d 919 (1985); *Warman v. Warman,* 294 Pa. Super. 285, 293, 439 A.2d 1203 (1982).

Moreover, the Act empowers a court to refrain from asserting jurisdiction, even when otherwise properly held, if the party seeking custody has improperly brought the child to Pennsylvania from another state, 42 Pa. C.S.A. § 5349, *Commonwealth ex rel. Zaubi v. Zaubi,* 492 Pa. 183, 423 A.2d 333 (1980). A court may also decline jurisdiction when it finds that Pennsylvania is an inconvenient forum and another state is a more convenient forum, 42 Pa. C.S.A. § 5348, *Commonwealth ex rel. Octaviano v. Dombrowski,* 290 Pa. Super. 322, 326, 434 A.2d 774 (1981). The Pennsylvania version of the Act also includes a provision which allocates jurisdiction between and among courts of common pleas in the same manner in which the Act itself confers jurisdiction between and among courts of different states, 42 Pa. C.S.A. § 5364.

## II.

The parties to this appeal were divorced by decree entered in Lackawanna County in June, 1984. When the divorce action began, the Lackawanna court ordered that the mother would have custody of their two children, a

ten-year-old son and a six-year-old daughter. However, the record indicates that the father took the son to Florida to live while the divorce was pending. After the divorce decree was entered, the son remained with his father in Florida, apparently with the consent of his mother. Meanwhile, the daughter remained in Pennsylvania with her mother. There were no further proceedings in the Lackawanna divorce action to determine custody of the children.

In 1985, the father brought an action for custody in Lackawanna County. The mother and daughter had since moved to Northampton County, a fact which prompted the court to dismiss the action on venue grounds. In May, 1985 the father filed a second action in Northampton County, seeking custody of both children. He later deleted the claim for his son, who continued to live with him in Florida. The mother responded with a counterclaim for the son, to which the father objected on the ground that Pennsylvania lacked jurisdiction under the UCCJA to consider it.

The trial court agreed, reasoning that Florida, not Pennsylvania, was the son's "home state". Further, the court held that a finding that another state was the child's home state precluded the assumption of jurisdiction on any other ground. In any event, the court explained, it lacked jurisdiction under 42 Pa. C.S.A. § 5364, since Northampton County was neither the child's "home county", nor were there "significant contacts" with Northampton to compel the exercise of jurisdiction.

### III.

On appeal, the mother argues that the Northampton action was in substance a petition for modification of the existing Lackawanna order. Accordingly, she contends that the son's "home state" within six months of commencement of the Lackawanna divorce proceeding should control. We need not address the difficult question of when this custody action commenced, however, because we hold that the UCCJA contemplates "significant contacts" jurisdiction even when the "home state" is not the forum state. More-

over, assuming without deciding that Pennsylvania was not the child's home state, we hold that there are significant contacts here and that the dismissal of the counterclaim was error.

The trial court relied on this court's decision in *Tettis v. Boyum*, 317 Pa. Super. 8, 463 A.2d 1056 (1983) to support its conclusion that when a state other than Pennsylvania is a child's "home state", a Pennsylvania court cannot exercise jurisdiction on a "significant contacts" theory. While language in *Tettis* suggests that a Pennsylvania court should refrain from assuming jurisdiction when another state is the child's home state, 317 Pa. Super. at 15, 463 A.2d 1056, the case itself held that the exercise of jurisdiction by Pennsylvania was proper, even though the child's "home state" was Texas. The court wrote: " . . . while home state jurisdiction is favored as the preferable basis of jurisdiction . . ., 'the Act clearly implies that there *will* be factual situations that will impel a court to accept jurisdiction even when 'home' jurisdiction exists elsewhere' ", 317 Pa. Super. at 18 (citations omitted). *See also Hattoum v. Hattoum*, 295 Pa. Super. 169, 175, 441 A.2d 403 (1982).

The question for resolution thus becomes whether this factual situation is one which impels a court to accept jurisdiction. More precisely, our determination depends on whether an exercise of "significant contacts" jurisdiction substantially furthers the policies underlying the UCCJA.

Clearly, each individual involved in this custody litigation has a significant connection with Pennsylvania. The child's mother and sister live in Pennsylvania, and the child spent the first several years of his life here. Moreover, the child's father, who only recently moved to Florida from Pennsylvania, returned here to bring the original custody action. Much of the evidence regarding the "future care, protection and relationships" of the daughter will also be relevant in determining the custody of the son. Even evidence regarding the potential lifestyle of the children in Florida is available in Pennsylvania by virtue of the father's willingness to bring suit here. Cf. *Levin v. Barish*, 505 Pa.

514, 522–23, 481 A.2d 1183 (1984) (plaintiff in equity action cannot assert lack of jurisdiction to bar court's order forcing him to serve as an escrow agent); *Henderson v. Delaware River Joint Toll Bridge Commission*, 362 Pa. 475, 491, 66 A.2d 843 (1949) (intervening plaintiffs, having voluntarily joined the litigation, not in a position to challenge court's jurisdiction).

We have no question that the exercise of "significant contacts" jurisdiction substantially furthers the policies underlying the UCCJA. In light of the father's decision to bring his original custody action here, disagreement over jurisdiction between our courts and the courts of Florida is unlikely. Moreover, the child and his family clearly are more closely connected with Pennsylvania than with Florida, whose only contact is the father's and son's recent move there.

## IV.

■ The trial court also held that regardless of whether there is jurisdiction over the counterclaim in Pennsylvania, there is no jurisdiction in Northampton County. In reaching this conclusion, the trial court relied on 42 Pa. C.S.A. § 5364, which allocates jurisdiction between Pennsylvania counties in the same manner as the UCCJA allocates jurisdiction between states. In this instance, § 5364 limits the exercise of jurisdiction unless the requirements of § 5344(a) are met with respect to the county as well as the state. The trial court reasoned that since the child who is the subject of the counterclaim has never lived in Northampton County, he has no contact there.

Much of the logic which allows the courts of Pennsylvania to exercise jurisdiction over this counterclaim allows Northampton County's courts to do the same. While it may be desirable that the custody determination be made in counties where the child has lived, "significant contacts" jurisdiction contemplates contacts other than past residence or domicile in the county where jurisdiction is to be exercised. Cf. *In re Sagan*, 261 Pa. Super. 384, 387–88, 396

A.2d 450 (1978) (pre-UCCJA child custody jurisdiction depends on residence or domicile of child). All that is required is that the child have a "connection" with the county which is "significant". Here, as we have noted, the child's mother and sister live in Northampton County, and the father has initiated a related custody action there. Clearly, these contacts are sufficient to warrant the exercise of jurisdiction by Pennsylvania. We hold that they also allow the exercise of jurisdiction by Northampton County.

Order vacated. Remanded for proceedings consistent with this opinion.

Jurisdiction is relinquished.