615 A.2d 786

**Joseph W. BOUDWIN, Appellant,**

v.

**Kimberly D. BOUDWIN.**

Superior Court of Pennsylvania.

Argued August 25, 1992.

Filed Nov. 6, 1992.

Mark Momjian, Philadelphia, for appellant.

Kathleen A. Farrell, Media, for appellee.

Before BECK, JOHNSON and HOFFMAN, JJ.

BECK, Judge.

The question on appeal is the application of the jurisdictional sections of the Uniform Child Custody Jurisdiction Act where the parties have shared physical and legal custody of the child.

This is an appeal from an order of the Court of Common Pleas of Delaware County deferring to the jurisdiction of the Circuit Court of Page County, Virginia in this child custody action. Because jurisdiction properly lies in Virginia, we affirm.

On January 19, 1987, Appellant Joseph W. Boudwin ("Father") and Appellee Kimberly Dawn Boudwin Sours ("Mother") were married in Mississippi. As military personnel, they resided at Clark Air Force Base in the Phillipines, where their only child, Jesse, was born on August 11, 1987. On September 22, 1988, Father and Mother separated and signed a Separation Agreement ("the Agreement") dividing their assets and establishing custody of Jesse. Father and Mother agreed to share legal custody and primary physical custody. Under the Agreement, they would share physical custody on a six month rotating basis until Jesse turned five, at which time the physical custody arrangement would be reconsidered.

In October 1988, Mother returned to the United States with Jesse to begin her first six month period of primary physical

custody, in accordance with the Agreement. Mother and Jesse lived in Luray, Page County, Virginia. Thereafter, the Agreement of September 22, 1988 was supplemented on two occasions to reflect changes in the custody arrangement. Because of the deteriorating political situation in the Phillipines, the parties agreed that for the year 1990, Jesse would not be returned to Father in the Phillipines for his scheduled primary physical custody period. Mother would retain primary physical custody until Father left the Phillipines, and then Father would receive primary physical custody for a term equal to that during which Mother had physical custody from May 1990, to make up for the difference.

Pursuant to a Petition for Divorce filed by Father in Delaware County, Pennsylvania on January 31, 1990, and an Affidavit of Agreement of the Mother, a Divorce Decree was granted on July 16, 1990. Although Father raised the issue of custody in his Divorce Petition, no custody determination was ever made in that action. The Divorce Decree states that the Delaware County Court "retains jurisdiction over all matters properly raised heretofore." [1]

Father was separated from the military on May 8, 1991, and he returned to his primary domicile in the United States, in Delaware County. Pursuant to the amended Agreement of the parties, Father obtained primary physical custody of Jesse on May 10, 1991, and he was to retain custody for as long as, but not longer than, one year. Mother was to enjoy partial physical custody during that time.

In early June 1991, as agreed, Jesse went to spend a week with his Mother in Virginia. On June 15, 1991, Mother informed Father that she would not be returning Jesse to Pennsylvania pursuant to their Agreement. While Jesse was

---

1. The Delaware County court's Order of July 16, 1990 states that "it is ORDERED and DECREED that Joseph Willard Boudwin, Plaintiff, and Kimberly Dawn Rothgeb Boudwin, Defendant, are divorced from the bonds of matrimony. This court retains jurisdiction over all matters properly raised heretofore.
      By the Court:
      Robert A. Wright, J. /s/."

with his mother, she instituted a custody action in Virginia on June 13, 1991.[2]

After Mother's refusal to return the child, Father filed a Petition for Custody and a Petition for Special Relief in the Court of Common Pleas of Delaware County and obtained the court's first Order of June 19, 1991, mandating Jesse's return to Pennsylvania pursuant to the September 22, 1988 Agreement and the addenda thereto.[3] The court further ordered that pursuant to that Agreement, the Father was to have primary physical custody of the child for not more than one year from May 8, 1991. On June 21, 1991, the Honorable Beverly B. Bowers of the Juvenile and Domestic Relations Court of the Commonwealth of Virginia signed an Order giving full faith and credit to the Delaware County court's Order of June 19, 1991, and returned Jesse to Father in Pennsylvania.

Mother appealed Judge Bowers' full faith and credit Order, and this appeal resulted in the July 18, 1991 Order of the Honorable Joshua L. Robinson of the Circuit Court of Page County Virginia. That Order stated that Mother's allegations

**2.** It is unclear from the record when Father first learned about the Virginia custody action. In his custody petition filed in Delaware County, on June 19, 1992, Father averred that he did "not have information of any custody proceeding concerning the said child in any court of Pennsylvania or any other state."

**3.** Had the Delaware County court known of the Virginia action at this time, its Order of June 19, 1991 would have been contrary to the express terms of Section 5347 of the Uniform Child Custody Jurisdiction Act which provides in pertinent part:

(a) General rule.—A court of this Commonwealth shall not exercise its jurisdiction under this subchapter if, at the time of filing the petition, a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this subchapter, unless the proceeding is stayed by the court of the other state because this Commonwealth is a more appropriate forum or for other reasons....

Section 5347 describes procedures to be followed by the courts in both states to ensure that proper communication and coordination are preserved. 23 Pa.C.S.A. § 5347. *See also, Grun v. Grun,* 344 Pa.Super. 432, 496 A.2d 1183 (1985), *aff'd,* 511 Pa. 374, 514 A.2d 1372 (1986) (Pennsylvania court should have vacated its custody order upon notice that custody action had been earlier filed in Texas).

Because we hold that the trial court properly deferred jurisdiction to Virginia later in these proceedings, any error on this point is harmless.

in her Custody Petition established a prima facie case that jurisdiction over the child's custody is in Virginia, and a hearing was scheduled for August 5, 1991 on the custody issue. The Pennsylvania court was notified of the scheduled hearing.

The Pennsylvania court then held a hearing on the jurisdictional issue on July 31, 1991. After the hearing, the Pennsylvania court conferenced the matter with Judge Robinson in Virginia. The Pennsylvania court then vacated its order of June 19, 1991, and issued the Order of August 6, 1991, deferring jurisdiction to the Circuit Court of Page County, Virginia. Father's timely appeal of the August 6, 1991 Order followed.

Father argues on appeal that the Pennsylvania trial court erroneously relinquished jurisdiction over this custody action. We note that when reviewing the trial court's decision not to exercise jurisdiction in child custody matters, we may reverse only if there has been an abuse of discretion. *Joselit v. Joselit*, 375 Pa.Super. 203, 544 A.2d 59 (1988). We find no such abuse in this case.

■ The issue of jurisdiction in child custody matters is addressed in the Uniform Child Custody Jurisdiction Act ("UCCJA"), which has been codified in Pennsylvania at 23 Pa.C.S.A. §§ 5341 *et seq.* Section 5344 sets forth the various bases for jurisdiction:

(a) General rule.—A court of this Commonwealth which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) this Commonwealth:

(i) is the home state of the child at the time of commencement of the proceeding; or

(ii) had been the home state of the child within six months before the commencement of the proceeding and the child is absent from the Commonwealth because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this Commonwealth;

(2) it is in the best interest of the child that a court of this Commonwealth assume jurisdiction because:

(i) the child and his parents, or the child and at least one contestant, have a significant connection with this Commonwealth; and

(ii) there is available in this Commonwealth substantial evidence concerning the present and future care, protection, training and personal relationships of the child;

(3) the child is physically present in this Commonwealth, and:

(i) the child has been abandoned; or

(ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent;

(4)(i) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraph (1), (2) or (3), or another state has declined to exercise jurisdiction on the ground that this Commonwealth is the more appropriate forum to determine the custody of the child; and

(ii) it is in the best interest of the child that the court assume jurisdiction; or

(5) the child welfare agencies of the counties wherein the contestants for the child live, have made an investigation of the home of the person to whom custody is awarded and have found it to be satisfactory for the welfare of the child.

23 Pa.C.S.A. § 5344.

. It is clear from the language of Section 5344 that UCCJA contemplates situations of concurrent jurisdiction in more than one state. For example, a child may have a "significant connection" to a state other than his "home state" where, as in this case, the parents live in different states, there has been a shared custody arrangement, the child visits his grandparents, attends schools, and is treated by doctors in two different states. The bases for jurisdiction outlined in the statute are alternatives, and the fact that one state is the child's "home

state" does not automatically confer jurisdiction upon that state. *See, e.g., Merman v. Merman,* 412 Pa.Super. 247, 603 A.2d 201 (1992); *Tettis v. Boyum,* 317 Pa.Super. 8, 463 A.2d 1056 (1983); *Hattoum v. Hattoum,* 295 Pa.Super. 169, 441 A.2d 403 (1982). We have held, however, that where concurrent jurisdiction exists, the home state is the preferable forum for disposition of the child custody issue. *Warman v. Warman,* 294 Pa.Super. 285, 439 A.2d 1203 (1982); *Joselit, supra.* As a practical matter, and absent any extenuating circumstances, the child's home state usually is the one with which he or she has the most "significant connection." *Cf. Tettis, supra* (where children had lived for over two years with father in Texas, but father was moving to California, children's "substantial contacts" with mother's home in Pennsylvania were more compelling for jurisdiction decision than home state inquiry).

Section 5343 of UCCJA defines "home state" as

The state in which the child immediately preceding the time involved lived with his parents, a parent or a person acting as parent, or in an institution, for at least six· consecutive months, and, in the case of a child less than six months old, the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six month or other period. 23 Pa.C.S.A. § 5343.

The trial court properly held that Virginia was Jesse's "home state" for purposes of a jurisdiction determination. Jesse lived with his mother in Virginia for about a year from May 13, 1990, to May 10, 1991. At that time, Jesse went to live with Father in Pennsylvania. He returned to his mother for a visit on June 9, 1991. At the time mother filed her custody action on June 13, 1991, Jesse was with her in Virginia. Virginia therefore was properly considered Jesse's home state.

 Father asserts that Jesse has sufficient "significant contacts" with Pennsylvania to establish concurrent jurisdiction with Virginia. During the time that Father was in the Phillipines, and Mother had primary physical custody pursu-

ant to the Separation Agreement, she brought Jesse to Pennsylvania to visit his paternal grandparents on a monthly basis. Also, Jesse has received medical care, attended Sunday School and vacation Bible school, and has been enrolled in a preschool in Pennsylvania. Although the trial court did not make a finding that these were "significant contacts" sufficient to establish a basis for jurisdiction under 23 Pa.C.S.A. § 5344(a)(2), such a finding would not alter the disposition of this appeal. Absent circumstances which would make Virginia an inappropriate forum, the Pennsylvania court correctly deferred to the home state's jurisdiction.[4]

Father argues that Virginia is not the appropriate forum for disposition of the child custody action, and he bases his arguments on two other sections of UCCJA.[5] However, his

4. Father argues that the Pennsylvania court failed to consider that Virginia is an "inconvenient forum" under Section 5348 of UCCJA. That section sets forth factors to be considered by a court which has jurisdiction under Section 5344, but which may otherwise decide to decline such jurisdiction:

In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose, it may take into account the following factors, among others:

(1) If another state is or recently was the home state of the child.

(2) If another state has a closer connection with the child and his family or with the child and one or more of the contestants.

(3) If substantial evidence concerning the present or future care, protection, training and personal relationships of the child is more readily available in another state.

(4) If the parties have agreed on another forum which is no less appropriate.

(5) If the exercise of jurisdiction by a court of this Commonwealth would contravene any of the purposes stated in section 5342 (relating to purposes and construction of the subchapter)....

Although Father argues that Mother's wrongful conduct in refusing to return Jesse after visitation in June 1991 should have been considered as contravening UCCJA's express purpose of deterring "abductions and other unilateral removals of children undertaken to obtain custody awards," 23 Pa.C.S.A. § 5342(a)(5), it is clear that this "inconvenient forum" argument should have been addressed to the Virginia court which could "decline to exercise its jurisdiction" under Section 5348. Moreover, as is discussed below, Mother's conduct in this regard did not "benefit" her position in the litigation of the jurisdiction issue.

5. The record also indicates that Father made some attempt at the Pennsylvania hearing to raise questions about Mother's treatment of Jesse, in order to base Pennsylvania jurisdiction on Section 5344(a)(3)

arguments are not supported by the applicable Pennsylvania law.

■ Father asserts that he was the first to initiate a custody proceeding when he filed his Complaint in Divorce on January 31, 1990 in Pennsylvania. He essentially argues that the Virginia courts should have declined to exercise jurisdiction in accordance with Section 5347 of UCCJA because a prior "custody proceeding" was already pending in Pennsylvania on June 13, 1991 when Mother filed her custody petition. UCCJA defines "custody proceeding" broadly to include "proceedings in which a custody determination is one of several issues, such as an action in divorce or separation." 23 Pa. C.S.A. § 5343. Father's divorce petition included a count for child custody, and he argues that this "first in time" filing confers jurisdiction upon Pennsylvania rather than Virginia.

Father cites several cases which hold that jurisdiction was retained by the state in which a divorce action including a claim for custody was first filed. *Levinson v. Levinson,* 354 Pa.Super. 407, 512 A.2d 14 (1986); *Grun v. Grun, supra; Bem v. Bem,* 316 Pa.Super. 390, 463 A.2d 16 (1983), *aff'd,* 505 Pa. 605, 482 A.2d 1273 (1984). However, each of these cases is distinguishable from this case. In each case, jurisdiction was retained by the state where a custody proceeding *that resulted in an actual custody determination* was first filed. UCCJA defines a "custody determination" as "a court decision and court orders and instructions providing for the custody of a child, including visitation rights." 23 Pa.C.S.A. § 5343. *See e.g., Carpenter v. Carpenter,* 326 Pa.Super. 570, 474 A.2d 1124 (1984) (custody order was issued by Massachusetts court and Pennsylvania court properly relinquished jurisdiction of later custody action); *Zaubi v. Zaubi,* 275 Pa.Super. 294, 418 A.2d 729 (1980), *aff'd,* 492 Pa. 183, 423 A.2d 333 (1980) (Danish custody decree entered prior to filing of Pennsylvania custody action must be credited).

regarding an "emergency" of abuse or neglect. However, there was no finding that emergency jurisdiction was warranted, and Father did not include this argument in his briefs to this court.

Count II of Father's Pennsylvania divorce complaint first raised the issue of Jesse's custody, but no custody determination was ever made by the Pennsylvania court. Although the divorce decree states generally that the Delaware County "Court retains jurisdiction over all matters properly raised heretofore," the parties were at all times prior to June 1991 "functioning under a custody agreement which they reached between themselves ... [N]o custody determination was made by the Delaware County Common Pleas Court." [6] Moreover, UCCJA's priority rule should not be interpreted to "encompass any and all actions filed in this Commonwealth regardless of their antiquity or dormancy." *Zellat v. Zellat,* 351 Pa.Super. 623, 506 A.2d 946, 949 (1986). Mother's Virginia custody action was the first "proceeding" requiring an application of UCCJA, and therefore, it was the first custody proceeding for purposes of establishing jurisdiction under the Act. *Id.* By contrast, the Pennsylvania divorce decree that was entered in July 1990 made no reference to child custody, and the divorce action is no longer pending. *See Levinson v. Levinson,* 354 Pa.Super. 407, 512 A.2d 14 (1986) (court's jurisdiction over a proceeding continues until an appeal of its order has been filed or time for appeal has elapsed).

There was no live custody "proceeding" in Pennsylvania before Mother filed her action in Virginia on June 13, 1991. Therefore, Father's argument on this point fails.

■ Next, Father argues that Virginia is an inappropriate forum for the custody determination under Section 5349 of UCCJA, because of Mother's "wrongful conduct" in refusing to return Jesse to Pennsylvania after his visit to her in Virginia in June 1991. Section 5349 provides in part:

If the petitioner for an initial decree has wrongfully taken the child from another state or has engaged in conduct intending to benefit his position in a custody hearing, the

6. *Per curiam* Order of the Superior Court of Pennsylvania, dated August 16, 1991, dissolving the temporary stay of the Virginia court Order directing Father to return Jesse to Mother pending the disposition of the custody action.

court may decline to exercise jurisdiction if this is just and proper under the circumstances....

23 Pa.C.S.A. § 5349(a). Father's reliance on this section of UCCJA is misplaced. Its language describes a situation where a trial court should decline jurisdiction rather than assume it, and the argument should have been addressed to the Virginia court, not the Pennsylvania court.

Of course, one of the express purposes of UCCJA is to "deter abductions and other unilateral removals of children undertaken to obtain custody awards." 23 Pa.C.S.A. § 5342(a)(5). *See, e.g., M.D. v. B.D.,* 336 Pa.Super. 298, 485 A.2d 813 (1984) (Washington custody order will not be recognized by home state Pennsylvania since Mother abducted child and took him to Washington). Although it appears that Mother breached a private custody agreement when she refused to return Jesse to his Father in Pennsylvania, this "abduction" did not necessarily benefit her position in this matter. Virginia already was Jesse's home state at that time, and her wrongful conduct did not alter this fact. Our holding on this issue should not be misconstrued as approval or even tolerance of Mother's behavior in this instance. However, her "abduction" of Jesse while he was in his Virginia home probably did not constitute an "abrupt disruption of life so abhorrent to the intent of the Act." *Hattoum, supra,* 295 Pa.Super. at 176, 441 A.2d 406 at n. 2.

Therefore, we affirm the trial court's order deferring jurisdiction of this child custody matter to the Commonwealth of Virginia.

Order affirmed.

JOHNSON, J., concurs in the result.