Janice FAVACCHIA, Now Janice Brown, Appellant,

v.

Henry FAVACCHIA, Appellee.

Superior Court of Pennsylvania.

Submitted Sept. 5, 2000.

Filed Feb. 27, 2001.

F. Paul Barakat, Chadds Ford, for appellant.

Joseph M. Lamonaca, Chadds Ford, for appellee.

Before JOHNSON, J., EAKIN, J., and CERCONE, President Judge Emeritus.

CERCONE, President Judge Emeritus.:

¶ 1 Appellant, Janice Favacchia/Brown, hereinafter ("Mother"), appeals from the order of the Trial Court entered February 9, 2000 confirming its earlier custody order of January 7, 1999. After review, we affirm.

¶ 2 Mother and Appellee, Henry Favacchia, hereinafter ("Father") were married in 1984, here in Pennsylvania. Trial Court Findings of Fact, filed 2/9/2000, at 1. At the time of the marriage, Mother had one child, Joshua, who was born in 1983. *Id.*

at 2. After their marriage, Mother and Father settled in the town of Upper Darby, which is in Delaware County Pennsylvania and, subsequently, one child, Jessica, was born to them in 1987. *Id.* Approximately a year later, the parties separated. *Id.* Ultimately, the parties were formally divorced in 1992. Mother continued to live in Pennsylvania from the time of her separation in 1989 until February of 1992, when she moved to Wilmington, Delaware with both Joshua and Jessica. Father continued to live at all times in Pennsylvania where he presently still resides. *Id.* at 2.

¶ 3 The lengthy and convoluted history of these instant proceedings between the parties began in 1989 when Mother filed a complaint for custody of Jessica and a petition for emergency custody in the Court of Common Pleas of Delaware County, Pennsylvania. The Trial Court entered an order granting Mother temporary custody of Jessica and giving visitation rights to the Father. Father then filed an answer to the complaint in custody and also a counterclaim seeking custody of both Jessica and Joshua.

¶ 4 In July of 1990 Mother and Father reached a stipulation as to custody of both minor children, which was made an order of Court on July 26, 1990. The order provided that both parties were to have joint legal custody of Jessica. Mother was awarded primary physical custody of Jessica and Joshua, and Father was given partial physical custody on alternating weekends and for four (4) hours on the Mondays preceding his custodial weekends and for four (4) hours on the Wednesdays following his custodial weekends. *See* Trial Court Order, entered 7/26/90.

¶ 5 From 1990 through 1994 a number of contempt proceedings in the Delaware County Court of Common Pleas transpired which were prompted by Mother's alleged interference with Father's visitation rights under the 1990 custody order. These petitions resulted in series of hearings before the Honorable Joseph T. Labrum, Junior of the Court of Common Pleas of Delaware County. *See Favacchia v. Favacchia,* 451 Pa.Super. 661, 679 A.2d 854 (1996) (unpublished memorandum filed 5/15/96), slip memo. at 2. On March 4, 1991 and May 28, 1992 Father filed petitions for contempt on the basis that Father had no knowledge of the whereabouts of his children. *Id.* After a hearing on November 6, 1992 the Trial Court awarded Father temporary physical custody and visitation of Joshua and Jessica. *Id.*

¶ 6 In January of 1994, the Trial Court conducted another contempt hearing since Father had allegedly not seen his children for the preceding six (6) weeks. *Id.* at 3. Mother was instructed to allow visitations to resume. *Id.* Yet another contempt hearing was scheduled for June 2, 1994, at which time Mother did not attend. On June 6, 1994 the Trial Court issued another order reinstating the provisions of its November 6, 1992 custody order. The Trial Court later modified the November 6, 1992 order, by order dated July 18, 1994 requiring the parties to obtain psychological evaluations. *Id.*

¶ 7 After a hearing held August 16, 1994, the Trial Court entered a new custody order on August 17, 1994. Although this order did not alter the fundamental custody arrangement established by the 1990 agreement and order, in that Mother retained primary physical custody of Jessica and Joshua, the order did, however, impose additional requirements. Specifically, Mother was required *inter alia* to provide Father with the home address and telephone numbers of the children, the name of the schools the children would be attending, and the address of the children's doctor. The order expressly allowed the

Father to call the children on the phone each Wednesday evening. The order also delineated the manner in which Mother and Father would transfer custody of both minor children during custody exchanges. Mother was to drop the children off at the Father's home in Pennsylvania at the beginning of each visit and the Father was to return the children to the Mother's home at the conclusion of his visitation period. Father was granted two weeks of vacation with the children. Both parties were also ordered to attend counseling and to obtain Protection From Abuse Orders against each other. *See* Trial Court Order, entered 8/17/94.

¶ 8 Based on Mother's alleged failure to provide Father with information concerning the children's whereabouts as required by the August 17, 1994 order, Father filed yet another petition for contempt and, after a contempt hearing held on September 7, 1994, Mother was found in contempt and ordered to pay $1,500.00 in counsel fees. *Favacchia v. Favacchia, supra,* slip memo. at 4.

¶ 9 Father filed a new contempt petition on February 6, 1995 alleging three (3) violations of the Trial Court's August 17, 1994 order. Father alleged that Mother failed to drop off the children at the beginning of their visitation period as required by the order, that Mother failed to attend counseling sessions, and failed to provide him with copies of relevant materials from the children's school detailing the progress of their education. *See* Contempt Petition, filed 2/6/95. The Trial Court scheduled a hearing on Father's contempt petition for April 10, 1995. Mother subsequently informed the Trial Court by letter dated March 26, 1995 that she had registered the custody order of July 1990 in the State of Delaware. *Favacchia v. Favacchia, supra,* slip memo. at 4. It appears from our scrutiny of the record and the briefs of the

parties that no separate custody proceeding was commenced in the state of Delaware at that time, or any time thereafter.

¶ 10 Mother failed to appear for the April 10, 1995 hearing, however Father appeared and offered testimony. At the conclusion of the hearing, the Trial Court issued an order, dated that same day, which awarded primary physical custody of both minor children to Father subject to reasonable visitation by Mother, for which she would have to petition the Trial Court. *See* Order of Trial Court, dated 4/10/95.

¶ 11 On April 27, 1995 Mother filed a motion to vacate or modify the order of April 10, 1995. Mother also subsequently filed a notice of appeal to our Court from the April 10, 1995 order. Judge Labrum retired soon thereafter and the Honorable Kenneth A. Clouse was assigned this case.

¶ 12 In order to allow the Trial Court to rule on her motion to vacate, Mother withdrew her appeal of the April 10, 1995 order, and Judge Clouse entered a temporary custody order on June 16, 1995, agreed to by both parties through counsel, granting Mother primary physical custody of Joshua and Father primary physical custody of Jessica. *Favacchia v. Favacchia, supra,* slip memo. at 5. The Trial Court then vacated this order, and on June 26, 1995 entered a new custody order, agreed upon by the parties through counsel, which again granted Mother primary physical custody of Joshua and Father primary physical custody of Jessica. *Id.* The Court's order of June 26, 1995 also denied Mother's Petition to modify or vacate its order of April 10, 1995. *See* Order of Trial Court, dated 6/26/95.

¶ 13 Father filed a new contempt petition on July 7, 1995 alleging Mother's noncompliance with the terms of the June 26, 1995 custody order. The Trial Court conducted a hearing on this petition after which it entered an order on July 14, 1995

finding mother in indirect contempt of the June 26, 1995 custody order for failing to return the children to the Father after she had taken them for a week's vacation. In this order the Trial Court also continued all of the custody provisions contained in its order of June 26, 1995. *See* Order of Trial Court, dated 7/14/95.

¶ 14 On July 14, 1995, Mother filed a notice of appeal with our Court of the Trial Court's orders of April 10, 1995, June 16, 1995, June 26, 1995 and July 14, 1995. Our Court consolidated all four (4) appeals for disposition. Prior to our Court's final disposition of the consolidated appeals, our Court entered a temporary order on September 26, 1995 staying the Trial Court's April 10, 1995 order.

¶ 15 We must note that Mother's counsel repeatedly refers to this order in his brief and relies upon it to conclude that our Court has "already ruled ... on that date that the custody modification provision of the Contempt Order of April 10, 1995 'is null and void as the trial court lacked subject matter jurisdiction.' " Appellant's Brief at 8, quoting Amended Order of Superior Court, dated 9/26/95. We summarily reject this contention. Our Court's order of September 26, 1995 was merely a temporary order staying the Trial Court's implementation of the terms of its custody modification orders and reinstating the prior custody order of August 17, 1994 *pending the outcome of the appeal.* As such, the order was not in any way a conclusive determination of Appellant's jurisdictional claim on the merits. *See e.g. Goodstein v. Goodstein* 422 Pa.Super. 331, 619 A.2d 703, 706 (1992), *appeal dismissed as improvidently granted,* 536 Pa. 449, 639 A.2d 1180 (1994) ("A supersedeas order is not an appellate ruling on the merits of the judgment below; it does not open, strike off or vacate the judgment or otherwise remove the judgment from the

record or render it invalid."). Accordingly, Mother's counsel's reliance on this order as support for her conclusion that the Trial Court lacked jurisdiction in the instant matter is misplaced.

¶ 16 On May 15, 1996 a panel our Court issued an extensive memorandum which adjudicated each of the appeals. *Favacchia v. Favacchia, supra.* In this memorandum, our Court ruled that the appeal from the order of April 10, 1995 was untimely and quashed it. *Id.,* slip memo. at 10. Our Court deemed the appeal from the order of June 16, 1995 moot since the Trial Court had vacated that order and thus elected to quash it also. *Id.,* slip memo. at 11. Likewise, our Court held that the appeal from the order dated June 26, 1995 was interlocutory and quashed it as well. *Id.,* slip memo. at 14. Ultimately, however, our Court affirmed the order of July 14, 1995 finding Mother in contempt, but we remanded for further proceedings in the Trial Court. Our Court said:

> The July 14, 1995 order grants father's contempt petition, but keeps in effect the temporary provisions of the June 26, 1995 order. As set forth above, we find that the June 26, 1995 custody order is temporary in nature and contemplates further action with regard to mother's petition to modify/vacate the April 10, 1995 order. Therefore, we remand the matter to the trial court for further proceedings on mother's petition to modify and/or vacate the April 10, 1995 order.

*Id.,* slip memo. at 18.

¶ 17 When the case was returned to the Trial Court, the case was assigned to the Honorable Edward J. Zetusky, Jr. of the Court of Common Pleas of Delaware County. During the time period stretching from December of 1996 to September of 1998 Judge Zetusky conducted nine (9) separate evidentiary hearings in this matter, which resulted in a total of thirteen

(13) days of testimony. Judge Zetusky thereafter entered an order on January 7, 1999 awarding Mother primary physical custody of Joshua and Father primary physical custody of Jessica. Mother was granted partial custody of Jessica on alternating weekends and each Wednesday night. *See* Order of Trial Court, dated 1/7/99. Mother again appealed to our Court. *See Favacchia v. Favacchia,* 748 A.2d 781 (Pa.Super.1999) (unpublished memorandum filed 9/7/99).

¶ 18 In that appeal to our Court, Mother argued that the Trial Court lacked subject matter jurisdiction to enter its order transferring custody of the children absent the filling of a petition to modify custody. Mother also argued that the Trial Court lacked jurisdiction under the Uniform Child Custody Jurisdiction Act[1] (hereinafter "UCCJA") to enter its custody modification orders because both she and the children had relocated to Delaware. *Id.,* slip memo. at 3–4.

■ ¶ 19 In its disposition, our Court found that the Trial Court did not act improperly by ruling on the issue of custody absent the filing of a formal custody modification petition, since Appellant was clearly on notice that the hearings in the Trial Court would be addressing the best interests of the children. *Id.* at 5. Our Court also rejected the argument advanced by Mother that the Trial Court modified its prior custody orders solely upon its decision of April 10, 1995 that found Mother in contempt. Our Court noted that the extensive thirteen (13) days of hearings conducted by the Trial Court after our Court's previous remand comprehensively addressed the issue of custody. *Id.* at 5. Thus, our Court declined to find that the Trial Court had improperly entered the custody order exclusively as a sanction for having previously found Mother to be in contempt.[2] *Id.*

¶ 20 However, our Court deemed the certified record insufficient for review of the question of whether the Trial Court possessed jurisdiction, pursuant to the UCCJA, to modify the prior custody orders. As a result, our Court remanded for an evidentiary hearing on this issue so that the Trial Court could develop a more complete factual record on this matter. *Id.* at 4.

¶ 21 Upon remand, the Trial Court complied with our Court's directive and conducted an evidentiary hearing concerning this issue on September 27, 1999. The testimony taken at the hearing focused primarily on where the mother had lived prior to the entry of the order of April 10, 1995 and where the children attended school. The testimony received on these matters established that Joshua and Jessica had lived exclusively with their mother in Delaware from 1992–1995. N.T. Evidentiary Hearing, 9/27/99, at 32–33. During the 1993–1994 school year, both children attended school in Delaware. Joshua was in the fourth (4th) grade in the Brandywine School District in Wilmington Delaware. Jessica attended Kindergarten at Lancashire Elementary in the same school district. *Id.* at 35–36.

---

1. 23 Pa.C.S.A. § 5341 *et. seq.*

2. We again are compelled to note that Mother's counsel continues to raise arguments in the brief filed in the instant matter relating to these same two issues. As our Court has already ruled on the merits of these issues, we will not revisit them since our prior rulings constitute "the law of the case." *See Tudor v.*

*Township of Stowe,* 697 A.2d 1010, 1014 (Pa.Super.1997) ("The doctrine of the "law of the case" provides that where an appellate court has considered and decided a question on appeal, that court will not, in a subsequent appeal of another phase of the same case, reconsider its previous ruling.").

¶ 22 Jessica's attendance at school in Delaware was temporarily interrupted in 1995 when Father removed her from first grade in April of 1995 pursuant to the April 10, 1995 order. *Id.* at 42; N.T. Evidentiary Hearing 12/19/96, at 52–54. However, during the pendency of Mother's first appeal, as a result of our Court's interim order of September 25, 1996, Jessica returned to her Mother's custody for the duration of the 1995–1996 school year. N.T. Evidentiary Hearing, 9/27/99, at 43. After our Court's final adjudication of Mother's first appeal, custody of Jessica was transferred to the Father, and he presently retains custody. *Id.*

¶ 23 After further consideration, the Trial Court issued an order docketed February 9, 2000 in which it concluded that it did have subject matter jurisdiction to enter the order of April 10, 1995.[3] The Court's order of February 9, 2000 also reinstated and reaffirmed its prior order of January 7, 1999 which granted Father primary custody of Jessica and Mother primary custody of Joshua. Mother filed this instant timely appeal from the Trial Court's order of February 9, 2000.

■ ¶ 24 On appeal to our Court Appellant presents one issue for our review:

A. DID THE PENNSYLVANIA LOWER COURT EXCEED ITS SUBJECT MATTER JURISDICTION UNDER THE UCCJA BY ITS ENTRY OF A CONTEMPT ORDER ON APRIL 10, 1995 TRANSFERRING PRIMARY PHYSICAL CUSTODY OF A MINOR CHILD(REN)(sic) WHOSE "HOME STATE" FOR THE FOUR YEARS *PRIOR HAD BEEN DELAWARE AND NOT PENNSYLVANIA?*

Appellant's Brief at 11. Appellant's relevant argument with respect to this issue concerns the residence of the children at the time the order of April 10, 1995 was entered. Appellant points out that Jessica and Joshua had resided in the state of Delaware since 1992. Thus, Appellant reasons that since Pennsylvania was no longer the home state of the children for six (6) months prior to the entry of the April 10, 1995 order, the Trial Court lacked subject matter jurisdiction under the UCCJA to modify custody. While we agree that Pennsylvania was not the home state of the children at the time the Trial Court modified custody, we disagree with Appellant's ultimate conclusion that the Trial Court lacked jurisdiction under the UCCJA to modify its prior custody order.

■ ¶ 25 As our Court has said in a prior case:

A trial court's decision to exercise or decline jurisdiction in a matter involving the UCCJA is within the court's discretion, and we will not disturb the court's decision absent an abuse of that discretion.

*Van Dyke v. Van Dyke,* 722 A.2d 725, 727 (Pa.Super.1998). An abuse of discretion occurs only when there is an error in judgment, a misapplication of the law or when there is insufficient evidence of record to support the trial court's findings. *Kriebel v. Kriebel,* 766 A.2d 854 (Pa.Super.2000), ¶ 9, citing *O'Callaghan v. O'Callaghan,* 530 Pa. 176, 178, 607 A.2d 735, 735 (1992).

■ ¶ 26 Under the UCCJA, a Pennsylvania Trial Court has continuing jurisdiction to modify its preexisting child custody

3. The Trial Court additionally prepared comprehensive written findings of fact and conclusions of law at that time, as well as a subsequent opinion, regarding this issue which we have referred to in our discussion, *supra.* All have been of inestimable value to us in the conduct of our review. We are also cognizant of the thoroughness and care which the Trial Court has shown in its supervision of this litigation.

orders if the jurisdictional requirements of the UCCJA continue to be met. *Id.* at ¶ 14. Section 5344 of the UCCJA provides the following bases for a Trial Court's exercise of jurisdiction to modify a custody order:

(a) General rule.—A court of this Commonwealth which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or **modification** decree if:

(1) this Commonwealth:

(i) is the home state of the child at the time of commencement of the proceeding; or

(ii) had been the home state of the child within six months before the commencement of the proceeding and the child is absent from the Commonwealth because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this Commonwealth;

(2) **it is in the best interest of the child that a court of this Commonwealth assume jurisdiction because:**

(i) **the child and his parents, or the child and at least one contestant, have a significant connection with this Commonwealth; and**

(ii) **there is available in this Commonwealth substantial evidence concerning the present and future care, protection, training and personal relationships of the child;**

(3) the child is physically present in this Commonwealth, and:

(i) the child has been abandoned; or

(ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent;

(4)(i) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraph (1), (2) or (3), or another state has declined to exercise jurisdiction on the ground that this Commonwealth is the more appropriate forum to determine the custody of the child; and

(ii) it is in the best interest of the child that the court assume jurisdiction; or

(5) the child welfare agencies of the counties wherein the contestants for the child live, have made an investigation of the home of the person to whom custody is awarded and have found it to be satisfactory for the welfare of the child.

23 Pa.C.S.A. § 5344 (emphasis supplied). "Home State" is defined by the UCCJA as:

The state in which the child immediately preceding the time involved lived with his parents, a parent or a person acting as parent, or in an institution, for at least six consecutive months, and, in the case of a child less than six months old, the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period.

23 Pa.C.S.A. § 5343.

¶ 27 In the case at bar, the Trial Court found that Pennsylvania was not the "home state" of Jessica and Joshua under the UCCJA at the time of the "commencement of the proceeding which gives rise to the current controversy." Trial Court Opinion, filed 3/14/2000 at 2. The learned Trial Judge's assessment of the relevant time frame which must be considered for this determination is accurate. Jurisdiction under the UCCJA is determined at the time of the "commencement of the proceeding." *Simpkins v. Disney,* 416 Pa.Super. 243, 610 A.2d 1062, 1064 (1992); *Black v. Black,* 441 Pa.Super. 358, 657

A.2d 964, 968 (1995), *appeal denied*, 542 Pa. 655, 668 A.2d 1119 (1995); *Accord Dincer v. Dincer*, 549 Pa. 309, 319, 701 A.2d 210, 215 (1997). As the Trial Court's Order of April 10, 1995 was the genesis of the subsequent proceedings which gave rise to the Trial Court's custody orders which transferred custody of Jessica to the Father, April 10, 1995 marks the "commencement" of the modification proceedings. Since Joshua and Jessica had been living with their Mother in Delaware since 1992, they clearly had not lived in Pennsylvania for the immediate six (6) month period prior to the entry of the Trial Court's April 10, 1995 order. Thus the Trial Court's finding that Pennsylvania was not the children's home state was wholly proper.

¶ 28 It is true that "[t]he home state is the preferred basis for jurisdiction pursuant to the UCCJA." *Dincer, supra,* at 316, 701 A.2d at 213. However, it is by no means the exclusive basis for a trial court's jurisdiction under the UCCJA. *Merman v. Merman,* 412 Pa.Super. 247, 603 A.2d 201, 204 (1992); *Boudwin v. Boudwin,* 419 Pa.Super. 570, 615 A.2d 786, 789 (1992) *Tettis v. Boyum,* 317 Pa.Super. 8, 463 A.2d 1056, 1061 (1983). "The determination of a child's home state ... does not automatically confer jurisdiction upon that state." *Baines v. Williams,* 431 Pa.Super. 72, 635 A.2d 1077, 1081 (1993).

¶ 29 As our Supreme Court has made clear: "[O]nce the trial court completes its home state analysis, it must then analyze whether the children have a significant connection with the Commonwealth pursuant to Section 5344(a)(2). If so, the trial court must determine whether it is in the best interest of the children for the court to exercise jurisdiction." *Dincer* at 318, 701 A.2d at 215. Our Court has explained previously:

Although the drafters of the Uniform Act were careful to state that jurisdiction under § 5344(a)(2) was to be "interpreted in the spirit of the legislative purposes" and was intended to "limit jurisdiction rather than proliferate it," the Act clearly implies that there will be factual situations that will impel a court to accept jurisdiction even when "home" jurisdiction exists elsewhere. When two forums exist, however, only one should actually adjudicate [.]

*Hattoum v. Hattoum,* 295 Pa.Super. 169, 441 A.2d 403, 406 (1982) quoting Comment of Commissioners, 9 *Uniform Laws Annotated,* p. 124, West Publishing Company 1979.

¶ 30 In the instant matter, after concluding that home state jurisdiction did not exist, the Trial Court proceeded to address the question of whether jurisdiction existed on the basis of "significant contacts" of the parties and the children with our jurisdiction under Section 5344(a)(2). Trial Court Opinion, filed 3/15/2000, at 2. In its analysis, the Trial Court found the following factors established significant contacts with Pennsylvania: First, the Court noted that the parties were married in Pennsylvania and had lived in Pennsylvania during the course of the marriage. Trial Court Opinion, filed 3/15/2000, at 3. Second, the Court noted that at the time of the entry of the order of April 10, 1995 both Joshua and Jessica had lived the majority of their lives in Pennsylvania. *Id.* Third, the Court noted that it had initial jurisdiction over the custody proceedings which were commenced by the Mother in 1989, and noted that it had entered three separate custody orders and entertained numerous other petitions and motions on this case prior to 1995. *Id.* Fourth, the Court noted that Father had been a resident of Pennsylvania during the period of the marriage and during the custody litigation. *Id.* at 4. Lastly, the Court noted that visitation was

always conducted at the Father's residence in Pennsylvania. *Id.*

¶ 31 These factors do indeed support the conclusion that both the parties and the children had a significant connection with Pennsylvania such that the Trial Court had continuing jurisdiction to modify its earlier custody decree. Clearly both parties and the children have had a long and close acquaintance with this Commonwealth. After the parties were wed here in 1984, they resided here in this Commonwealth for the entire duration of their marriage. Father has been a lifelong resident of this Commonwealth and he currently has two sisters and a brother living in Pennsylvania. N.T. Hearing, 3/23/98, at 117–119. Mother lived in Delaware County Pennsylvania for over sixteen (16) years in a house in Upper Darby, which she owned, and which was the parties' marital and familial residence. N.T. Evidentiary Hearing, 9/27/99, at 50.

¶ 32 Joshua and Jessica were both born in Pennsylvania and they both lived a significant portion of their lives here. Joshua lived here for the first nine (9) years of his life and Jessica lived here the first five (5) years of her life. Moreover, even in spite of the children's relocation with their mother to the state of Delaware in 1992, they still returned regularly to this state to visit their father. Trial Court Findings of Fact, *supra*, at 16; N.T. Hearing, 3/23/98 at 135–136, 146.

¶ 33 Our Court has previously considered factors such as these as evidence of significant connections with Pennsylvania for purposes of establishing jurisdiction under the UCCJA. *See Tettis, supra,* (Mother's long residence in Pennsylvania, coupled with daughter's residence of over two (2) years in our state at various times in her life and son's residence in our state of eight (8) months following birth, were factors which established significant contacts); *Moffitt v. Moffitt,* 356 Pa.Super. 142, 514 A.2d 184, 187 (1986) (evidence of significant connections with Pennsylvania shown by mother's residence in Pennsylvania, child's presence in Pennsylvania during first several years of his life, and fact that father who sought custody of child brought action in Pennsylvania even though a resident of Florida); *Matter of D.L.S.,* 278 Pa.Super. 446, 420 A.2d 625, 627 (1980) (where parents were both lifelong residents of Pennsylvania, had married in Pennsylvania, had two children who were born in Pennsylvania, and who lived almost their entire lives in Pennsylvania, a significant connection with Pennsylvania was maintained by virtue of the length of the parents' and children's residence here); *Hattoum, supra,* (significant contacts of children to Commonwealth shown by fact that children lived in Pennsylvania for a year with mother, father had permanently resided in Pennsylvania for seven (7) years, and children returned to visit father each year). Thus, the learned Trial Court in the instant matter committed no abuse of discretion in concluding that it had jurisdiction under 23 Pa.C.S.A. § 5344(a)(2).

¶ 34 We acknowledge the fact that this is a situation where two jurisdictions have a basis to assert jurisdiction. The state of Delaware could theoretically claim jurisdiction over custody proceedings involving the children, as well, by virtue of the children's residence there from 1992 until 1995. However, as our Court has stated, where two separate jurisdictions each have a colorable claim to jurisdiction only one should exercise jurisdiction. *Hattoum, supra.* A court's exercise of jurisdiction should be consistent with the purposes of the UCCJA which are to:

(1) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of chil-

dren from state to state with harmful effects on their well-being.

(2) Promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child.

(3) Assure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training and personal relationships is most readily available, and that courts of this Commonwealth decline the exercise of jurisdiction when the child and his family have a closer connection with another state.

(4) Discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child.

(5) Deter abductions and other unilateral removals of children undertaken to obtain custody awards.

(6) Avoid relitigation of custody decisions of other states in this Commonwealth insofar as feasible.

(7) Facilitate the enforcement of custody decrees of other states.

(8) Promote and expand the exchange of information and other forms of mutual assistance between the courts of this Commonwealth and those of other states concerned with the same child.

23 Pa.C.S.A. § 5342.

¶ 35 As discussed, *supra,* Mother commenced the original custody proceeding involving the children in Delaware County, Pennsylvania in 1989. As a result, the Delaware County Court of Common Pleas has been heavily engaged with both parties and the children on an ongoing basis since that time. At no time has there ever been a separate custody proceeding commenced in the state of Delaware involving these children. Indeed, aside from Mother's registration of the 1990 Pennsylvania Custody order in the state of Delaware, the Delaware State Court System has not been involved in any way with the children or the parties. To the contrary, issues involving the custody and best interests of the children have always been decided in Pennsylvania by the Delaware County Court of Common Pleas. Clearly no jurisdictional competition or conflict with the courts of the state of Delaware exists in this situation. Moreover, Father did not acquire custody of the children by kidnapping them from the state of Delaware, but rather via the lawful order of a Pennsylvania Court. Consequently, the exercise of continuing jurisdiction by the Trial Court over the subject matter of its prior custody orders under these circumstances in no way frustrates the primary purposes of the UCCJA set forth above. *See e.g. Moffitt, supra,* 514 A.2d at 187 (exercise of significant contacts jurisdiction by Pennsylvania substantially furthered the policies underlying the UCCJA since Father, though a resident of Florida, elected to bring custody action here, thus there was little likelihood of disagreement between courts of Florida and Pennsylvania); *Hattoum, supra,* 441 A.2d at 407 (where there was no conflicting custody order from foreign jurisdiction and no simultaneous proceeding in foreign court and father retained custody of children pursuant to lawful court order, UCCJA was not contravened in letter and spirit, the trial court was free to assume and exercise jurisdiction of custody proceeding); *Compare and Contrast, Kriebel, supra,* (Pennsylvania Court found not to have continuing jurisdiction to modify its four (4) year old prior order, since competing custody proceeding had begun in North Carolina where children had lived

with Mother for prior six (6) years, and substantial evidence of record existed which showed that children's life focus was now North Carolina, and that children's contacts with Pennsylvania had been severely attenuated due to fact that the children rarely visited Pennsylvania).

¶ 36 23 Pa.C.S.A. § 5344(a)(2)(ii) also requires a showing that "there is available in this Commonwealth substantial evidence concerning the present and future care, protection, training and personal relationships of the child." The Trial Court found that there existed substantial evidence in Pennsylvania of these matters. Based on the considerable amount of evidence taken on these precise factors from various psychologists, social workers, family members and family friends at the nine (9) separate hearings held in this matter after remand, the Trial Court's conclusion in this regard was well-founded.

¶ 37 Accordingly the Order of the Court of Common Pleas of Delaware County is hereby affirmed. Jurisdiction relinquished.

¶ 38 JOHNSON, J., concurs in the result.